WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>$76,921.47 seized from Wells Fargo Bank Account XXXXXX6541, et. al.,<br><br>        Defendant,<br><br>And Regarding the Interest of Robert G. White and Janelle Higginbotham,<br><br>        Claimants. | No. CV-12-02258-PHX-DGC<br><br>**ORDER** |

The government has filed a motion for summary judgment on its forfeiture claim regarding property seized from Claimants Robert G. White and Janelle Higginbotham. Doc. 23. Claimants have not filed a response. For the reasons set forth below, the Court will grant the government's motion.

**I.     Background Facts.**

From October 2007 through July 2010, Oscar Fernando Ortiz-Terazon led a criminal enterprise that engaged in drug trafficking and money laundering. Doc. 24 ¶ 11. The conspiracy conducted illicit drug sales and laundered its money by using United Parcel Service ("UPS") accounts with names of fictitious businesses. Doc. 24 ¶ 13. The proceeds of the drug trafficking were deposited in co-conspirator bank accounts or shipped back to Arizona using UPS. *Id.* White, a UPS driver, participated in the conspiracy by delivering or diverting packages he knew to contain illegal controlled

substances or cash to conspiracy members.  Doc. 24, ¶ 14, 15.

On June 1, 2009, two members of the conspiracy – Sandra Bowen and Christopher Williams – were stopped en route to Rialto, California.  Doc. 24 ¶ 16.  Officers found approximately 519 pounds of marijuana as well as drug ledgers inside their vehicle.  *Id*.  An analysis of the drug ledgers by the DEA showed that the conspiracy had sold at least 3,000 kilograms of marijuana across the United States.  Doc. 24 ¶ 17.  Bowen and Williams entered into plea agreements and began to expose co-conspirators.  Doc. 24 ¶ 18, 19.  One co-conspirator identified by Williams and Bowen was a "compromised UPS employee in Arizona."  Doc. 24 ¶ 25, 27.  Investigators subsequently seized a document from 4329 East Southern Avenue, a home owned by a member of the conspiracy, while executing a search warrant.  Doc. 24 ¶ 49.  The document listed five fictitious addresses located in Phoenix, Arizona, and the following message: "I am on vacation from 21 Sep to Oct 2nd; 2 weeks I come back on Monday Oct 5th to work."  *Id*.  All five addresses listed in the document were on White's delivery route and the vacation schedule in the document coincided with his vacation schedule.  Doc. 24 ¶ 51, 52.  White denied writing the document.  Doc. 1 ¶ 52.

On April 27, 2012, officers interviewed Nicole White, the adopted daughter of Robert White.  Doc. 24 ¶ 118.  Nicole stated that she knew her father was dealing drugs, that White had little material wealth growing up, and that he "wanted it all now."  Doc. 24 ¶ 137.  She told the officers that White had promised her that he would stop dealing drugs after her mother passed away, and she believed White had been involved with drugs for approximately two to three years before her mother died on September 4, 2010.  Doc. 42 ¶ 138.

IRS tax records indicate that from 2005 to 2010, White had an adjusted gross income with a low of $70,613 in 2005 and a high of $82.570 in 2006.  Doc. 24 ¶ 56.  Records also indicate that Higginbotham earned $13,284.60 in 2008; $16,449.29 in 2009; $35,762.42 in 2010; and $29,466.77 through the third quarter of 2011.  Doc. 24 ¶ 58.

As early as January 2011, White began to co-mingle funds with Higginbotham by

moving funds to Wells Fargo Checking Account No. 8669 and Savings Account No. 6541, both held in Higginbotham's name. Doc. 24 ¶ 66. On May 7, 2011, White purchased Cashier's Check No. 527583 at Arizona Federal Credit Union in the amount of $54,000 payable to Janelle Higginbotham, which she deposited in Account No. 6541. Doc. 24 ¶ 67, 68. Prior to this deposit, the balance in the account was $1,028.18. Doc. 24 ¶ 68. By June 20, 2011, Higginbotham had transferred a total of $3,075.00 from her savings account to her checking account.

White continued to make cash and check deposits into Higginbotham's Wells Fargo accounts through January 12, 2012. Doc. 24 ¶ 70. A total of $9,786.51 in cash and checks was deposited into Higginbotham's checking account and $35,200 was deposited into her savings account. *Id*. Higginbotham has denied that White ever gave her cash or deposited money in her name except for a check from an insurance company for a claim White had filed for his house in Avondale. Doc. 24 ¶ 97, 98. White also paid cash for repairs and remodeling of Higginbotham's home in Ahwatukee. Doc. 24 ¶ 111.

On May 23, 2009, White deposited $15,000 in United States currency at the Arizona Federal Credit Union, which was applied to his truck loan. Doc. 24 ¶ 78. White conducted an identical transaction on July 9, 2009. Doc. 24 ¶ 79. On October 30, 2010, White deposited $16,500 in United States currency in Arizona Federal Credit Union Account No. 74-0. Doc. 24 ¶ 80.

Other than selling a few motorcycle parts, and a car and motorcycle to his niece, White claimed that he did not deal in large sums of cash. Doc. 24 ¶ 81. When White's home was searched, however, $16,204 in cash was found in a gun safe. Doc. 24 ¶ 103. White claimed to have borrowed cash totaling $12,000 to $14,000 from friends, his sister, his mother, and his cousin, but he lacked documentation for the loans. Doc. 24 ¶ 84.

On April 4, 2013, a jury found White guilty of drug trafficking and money laundering offenses. CRDoc. 261.[1] In a special verdict regarding the asset forfeiture

---

[1] Documents filed in the related criminal action, CR-11-01243-PHX-SRB, will be referred to as "CRDoc."

allegation, the jury unanimously found for the government concerning several items of property. *Id.* at 7-8.

## II.     Legal Standard.

### A.     Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"  Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 322-23 (holding that summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").[2]

/ / /

---

[2] *See also* LRCiv 56.1(b) ("Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the nonmoving party.").

- 4 -

**B.     Civil Forfeiture Standards.**

The substantive law and evidentiary burdens of the underlying case determine whether there is a genuine issue of fact.  *See Anderson* 477 U.S. at 252-56 (noting the "judge must view the evidence presented through the prism of the substantive evidentiary burden").  Therefore, "[s]ummary judgment procedures must necessarily be construed in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein."  *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 979 (9th Cir. 2002).

**1.     The Government's Burden of Proof.**

Under the Civil Asset Forfeiture Reform Act of 2000, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture[.]"  18 U.S.C. § 983(c)(1); *see United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002).  "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).

**2.     Claimant's Burden of Proof.**

If the government meets its burden of proof, the burden shifts to Claimants to prove, by a preponderance of the evidence, that the property was not connected with illegal activity.  *See Currency, U.S. $42,500.00*, 283 F.3d at 980.  To defeat a civil forfeiture action, a claimant must show "by a preponderance of the evidence that the property was not involved in a violation of the narcotics laws, or . . . otherwise refute the government's showing[.]"  *United States v. $215,300 in U.S. Currency*, 882 F.2d 417 (9th Cir. 1989).

**III.   Analysis.**

White and Higginbotham failed to execute and return the government's requests for admissions in this case.  Unanswered requests for admission are deemed admitted and

1  "may be relied on as the basis for granting summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007); Fed. R. Civ. P. 36(a)(3).

In its request for admission, the government submitted the following request to each Claimant: "Admit that the defendant property are proceeds or property traceable to being involved in a transaction or attempted transaction in violation of 21 U.S.C. § 881(A)(6), 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(A)(1)(C)." Doc. 24 ¶ 147 or 153. Claimants failed to respond, and their resulting admission covers every item of disputed property in this action. As such, all defendants *in rem* are subject to forfeiture.

**IT IS ORDERED** the government's motion for summary judgment (Doc. 23) is **granted**. Claimants' interest in defendants *in rem* is forfeited to the United States. The Clerk shall enter judgment consistent with this Order.

Dated this 9th day of October, 2013.

_____
David G. Campbell
United States District Judge